# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUILLIE L. HARVEY, JR. | Case No.1:12-cv-00904-AWI-DLB (HC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS |
| vs. | |
| G. LEWIS, | [Doc. 11] |
| Defendant | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner filed the instant petition for writ of habeas corpus on June 4, 2012. Petitioner challenges a disciplinary infraction he received for battery on a peace officer for which he received a 180-day loss of custody credits.

On August 13, 2012, Respondent filed a motion to dismiss the petition as not cognizable under § 2254. Petitioner filed an opposition on September 12, 2012.

///

///

///

## DISCUSSION

I.   Procedural Grounds for Motion to Dismiss

As mentioned, Respondent filed a motion to dismiss Rule 4 of the Rules Governing § 2254 Cases requires the Court to make a preliminary review of each petition for writ of habeas

1

corpus. The Court must dismiss a petition "[i]f it plainly appears from the face of the petition . . . that the petitioner is not entitled to relief." Rule 4 of the Rules Governing 2254 Cases; see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). The Ninth Circuit has allowed a Respondent to file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery v. Pulley, 533 F. Supp. 1189, 1194 & n. 12 (E.D. Cal. 1982). Therefore, the Court will review Respondent's motion to dismiss based on a lack of jurisdiction and failure to state a cognizable claim under Rule 4.

II.   Nature of Petitioner's Claims

Petitioner is a state prisoner serving an indeterminate life sentence for murder and use of a firearm. Petitioner raises the following three challenges to his 2010 disciplinary rules violation: (1) he was denied the opportunity to present witnesses at his disciplinary hearing; (2) the senior hearing officer failed to record Petitioner's true statement; (3) Lieutenant Villanueva failed to investigate Petitioner's allegations by interviewing friendly witnesses which denied him a fair and impartial hearing; and (4) the failure to allow Petitioner to take a polygraph test denied him his right to due process.

It appears that Petitioner has been denied parole at his eligibility hearings on at least four occassions-1999, 2003, 2007, and 2012.[1]

Respondent's motion to dismiss contends that the petition should be dismissed because this Court lacks habeas jurisdiction over Petitioner's due process claims because as a "lifer" who is past his minimum eligibility parole date (MEPD), his loss of credits does not impact the length of his sentence.

III.   Lack of Habeas Corpus Jurisdiction

---

[1] Petitioner's challenge to the July 2012 parole hearing raised in his opposition is not presently before this Court because it took place after the filing of the instant petition and could not have effectively been exhausted before the state court's 2011 opinions-the relevant and only determinations currently before this Court for review.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a).  A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement.  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), quoting, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.  In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement.  McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574; Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.

The Supreme Court has specifically held that challenges to prison disciplinary proceedings that have resulted in loss of time credits must be raised by way of a habeas corpus petition.  Preiser v. Rodriguez, 411 U.S. at 500.

Federal habeas corpus jurisdiction also exists when a prisoner seeks "expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole."  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)); see also Docken v. Chase, 393 F.3d 1024, 1028-1029, 1031 (9th Cir. 2004) (challenging state parole board's refusal to provide petitioner with annual review of his suitability for parole).

Expungement of a disciplinary finding is "likely" to accelerate a prisoner's eligibility for parole when his claim has "a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within the 'core' challenges identified [in Preiser].  Docken, 393 F.3d at 1031.  An inmate's claim strikes at the core of habeas corpus when it "attack[s] the very duration of [his] physical confinement itself" and seeks "immediate release or speedier release from that confinement."  Preiser, 411 U.S. at 487-488, 498.  The Ninth Circuit has found that a "sufficient nexus" exists, and therefore habeas jurisdiction is present where a prison inmate "seek[s] only

equitable relief in challenging aspects of [his] parole review that … *could* potentially affect the duration of [his] confinement." Docken, 393 F.3d at 1031 (emphasis in original.)  "[T]he likelihood of the effect on the overall length of the prisoner's sentence … determines the availability of habeas corpus." Id. at 1028 (quoting Ramirez, 334 F.3d at 858) (emphasis in original).

A disciplinary violation may affect the duration of an inmate's confinement as it is one of the many factors that Board reviews in making a determination of eligibility of parole. See Cal. Code Regs. tit. 15, § 2402(a).  However, a disciplinary infraction is only one of several factors the Board reviews to assess the "risk of danger to society if released from prison." Id.

Petitioner lost one hundred and eighty days of good time credits as a result of the disciplinary findings, however, there was no impact on the fact or duration of his incarceration. Petitioner is serving an indeterminate life term.  Although it is possible that the disciplinary infraction may have an impact on a future parole consideration (the last relevant decision in this case occurred in 2007-prior to the issuance of the rules violation), such impact is purely speculative.  Because Petitioner's MEPD has already passed (Ex. 4, CDC 112, Chronological History; Cal. Penal Code § 3041(a)), the credits an inmate earns under the California Penal Code and may forfeit for misbehavior in prison are applicable only to determinate sentences. Cal. Penal Code §§ 1170, 2932, 2933(a); Cal. Code Regs. tit. 15, § 3043.3(a).  If an inmate is serving both determinate and indeterminate sentences, the determinate portion is served first.  Cal. Penal Code § 669.  In such circumstances, credit earnings and losses will impact when the inmate's life term begins. Id.  When serving the life term, the inmate cannot be released on parole until his minimum eligible parole date (MEPD). Id. at 3046; Cal. Code Regs. tit. 15, § 2000(b)(67).  This date is adjusted taking into account any credit earnings and losses governed by the Penal Code. Cal. Code Regs., tit. 15, § 2400.  The adjustments to the MEPD are made when the inmate becomes eligible for parole consideration, and the initial parole hearing is held one year before

the MEPD. Cal. Penal Code § 3041(a). However, regardless of the inmate's MEPD, he will not be released until the parole board finds him suitable for parole. Once the inmate is found suitable for parole, his actual term of incarceration will not be determined by statutory credits, but by the parole board. Id.; Cal. Code Regs. tit. 15, §§ 2401(a), 2403. The board sets a base term of confinement, and has the ability to shorten the term through a post-conviction credit scheme apart from the Penal Code. Cal. Code Regs. tit. 15, §§ 2401, 2403.

The determinations of when Petitioner will be found suitable for parole, the base term of his sentence, and how much post-conviction credit to be applied to that term, is up to the Board. Thus, even were Petitioner to succeed in this petition and reclaim the loss of statutory credit, it would not necessarily result in an earlier release. Accordingly, there is no challenge to the validity or length of his sentence.

Although some courts, including this Court, have found jurisdiction in this instance (see e.g. Andrade v. Fisher, 2012 WL 1130625 (E.D. Cal. March 30, 2012), for the reasons explained above, the undersigned finds jurisdiction is lacking because the claim is too speculative for habeas corpus relief.

IV.    Analysis of Merits

Even if the Court found jurisdiction to exist, Petitioner's claims are clearly without merit.

The Supreme Court has long-acknowledged that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Ponte v. Real, 471 U.S. 491, 495 (1985). When a prison disciplinary proceeding may result in the loss of good time credits, it is clearly established that due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary

action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some evidence."  Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

This standard does not require an examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence.  Instead, the only question is whether "any evidence in the record … could support the conclusion reached by the disciplinary board."  Hill, 472 U.S. at 455-456.

The Kern County Superior Court issued the last reasoned decision denying the claim on the merits and stated as follows:

> The court has read and considered the petition for writ of habeas corpus filed July 25, 2011 from Pelican Bay State Prison, Crescent City, California.  Petitioner is serving a nineteen years to life sentence for murder and use of a firearm which he doesn't protest.
>
> He protests the guilty finding for battery on a peace officer forbidden under 15 Cal.Code Regs. Section 3005(d)(1).  He contends that the prison prevented him from calling witnesses at the disciplinary hearing and refused to permit him to take a polygraph test.  Petitioner contends that he refused to cell with a Hispanic inmate because he is Crips and received a murder conviction for murdering an Hispanic.  He contends the officers without provocation sprayed him with pepper spray using excessive force.
>
> The prison agrees.  While an inmate at California State Prison, Wasco California on August 30, 2012, Officer A. Ayala directed him to cell in cell 103.  Instead, petitioner shouted profanities at Officer A. Ayala and stated he was a "Salinas Valley Level IV".  Petitioner continued to shout profanities at Officer Ayala.  He then turned and struck Officer Ayala in the left shoulder.  He refused to assume a prone position causing both Officer Ayala and Officer Martinez to administer pepper spray.  Officer Martinez had to use his baton, but due to petitioner's movement, Officer Martinez inadvertently struck petitioner in the back.  Officer Martinez arrived on the scene blocking petitioner's path when he ran away from Officer Ayala who attempted to administer pepper spray.
>
> The Kern County District Attorney declined prosecution on September 9, 2010, and the disciplinary hearing occurred on September 30, 2010.  Petitioner wanted to call Officer Jaime, the investigative employee, but then declined to call any other witness including Officer Jaime.  The prison search for an Inmate Vidal resulted in two computer matches, neither of which were in California State Prison, Wasco at the time of the investigation.  Petitioner had no other witnesses he could name.

> So long as there is some evidence to support the imposition of discipline, the court will not disturb its imposition. *In re Powell* (1988) 45 Cal.3d 894, 902, 904, [I]n [Re] Dikes (2004) 121 Cal.App.4th 825, 829-830, *Superintendent v. Hill* (1985) 472 U.S. 445, 454-455.
>
> The hearing officer used the following evidence to support the guilty finding: the rules violation report, the medical report of Officer Ayala's injury. The crime incident reports and the investigative employee's report which corroborate the rules violation report.
>
> Petitioner cannot expect the prison to do his discovery for him. Although the hearing officer appointed an investigative assistance, petitioner must mention some exculpatory witnesses. Even so, the prison tried to locate Inmate Vidal but without success. To require the investigative assistant to interview all prisoners who may have witnessed the incident would be unduly burdensome.
>
> Petitioner also failed to present a written statement at the hearing. Petitioner's version of events is his life felt threatened and that is why he refused to cell with Inmate Vidal. However, the evidence shows otherwise including continued shouting of profanities and ultimately the commission of battery on Officer Ayala by striking him in the left shoulder. He attempted to flee the vicinity of the crime only to have his path blocked by Officer Martinez. The battery of Officer Ayala and continued refusal to obey orders resulted in administration of pepper spray. 15 Cal.Code Regs. Section 3268(a)(1) permits the officers to use reasonable force to subdue an inmate. The Documents within the petition indicate the officers used reasonable force to subdue petitioner given the refusal by petitioner to comply with their orders. The evidence of petitioner's guilt is overwhelming. Petitioner cites no authority and the court is aware of none requiring the prison to administer polygraph tests.
>
> On the basis of the foregoing, the petition for writ of habeas corpus is accordingly denied.

(Petition, at 10-11.[2])

The state court's determination on the merits is not contrary to or an unreasonable application of clearly established Supreme Court precedent. Here, the hearing officer's finding was supported by some evidence. Specifically, it was supported by Correctional Officer Ayala's written report of the incident, which stated, in part:

> On 8-30-10, at approximately 1951 hours, Inmate HARVEY H-28106, FDB2-103U arrived in the building and was escorted to cell #103. Inmate HARVEY looked inside the cell and said, "Man, fuck you. I don't get down like that. I ain't fucking locking up. I'm

---

[2] The page numbers represent the pagination numbering reflected on the Court's Management Electronic Case Filing system.

7

a mother fucking 'Crip.'  He's a mother fucking other!"  I gave Inmate Harvey three (3) direct orders to step inside his cell with negative results.  Inmate HARVEY then stated, "Fuck you, fucking make me, I'm a Salinas Valley, level 4 mother fucker!"  Inmate HARVEY then placed his hands above his chest and swung with his right fist striking me on my left shoulder.  While backing up, I withdrew my MK-9 OC Pepper spray, aimed and sprayed Inmate HARVEY on his upper facial area.  He immediately took off running through the rotunda towards 'B' side Officer D. Martinez blocked the path, forcing him to stop.  Officer Martinez and I, both gave Inmate HARVEY several orders to prone out with negative results.  Officer Martinez discharged his MK-9, spraying Inmate HARVEY on his upper facial area.  I then withdrew my Monadnock Expandable Baton (MEB).  Utilizing a forward strike, I swung at Inmate HARVEY's legs.  Due to his movements,  I inadvertently hit him in the back."

The hearing officer noted Petitioner's statement that "I ran to try to plead to the other officer…. I proned out D. Martinez then came up Ayala said he ran D. Martinez said lets show him how we do it here and then sprayed his whole canister in my face," and there is no evidence to support Petitioner's after-the-fact assertion that this was not his true statement.  The medical report of officer Ayala noted a seven inch reddened and swollen area to the left upper shoulder.  (Motion at 49, Medical Report of Injury or Unusual Occurrence, dated August 30, 2010.)

Although Petitioner claims that he was denied the opportunity to present witnesses at the hearing, the hearing officer noted that Petitioner requested to present inmate Vidal as a witness.  However, a search of the DDPS under the name of inmate Vidal revealed two inmates, both of which were not present at the Wasco State Prison Reception Center at the time of the incident at issue.  The hearing officer also noted that Petitioner requested officer A. Jaime as a witness; however, at the time of the hearing Petitioner stated he did not need officer Jaime after all as he only need an investigative employee.  Petitioner's further claim that Lieutenant Villanueva failed to interview friendly witnesses, is also without merit.   As the state court noted in rejecting Petitioner's claim, an investigate employee was appointed to assist Petitioner and there is no requirement prison officials conduct discovery on his behalf without the identity and some exculpatory information provided by Petitioner.  Nor are prison officials required to interview any and all witness who may have witnessed the incident, and such requirement would be unduly

burdensome, if not impossible. Moreover, contrary to Petitioner's contention, there is no entitlement to a polygraph test and the failure to provide such testing does not rise to a due process violation. Nor does such request in itself constitute a piece of documentary evidence supportive of his defense.

Given the record in this case, Petitioner cannot establish a due process violation, and his challenges to the disciplinary decision fail.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the instant petition for writ of habeas corpus for failure to state a cognizable claim be GRANTED;

2. In the alternative, the instant petition for writ of habeas corpus be DENIED; and

3. The Clerk of Court be directed to enter judgment and terminate this action.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **November 14, 2012**          /s/ *Dennis L. Beck*
                                       UNITED STATES MAGISTRATE JUDGE